**WO**                  NOT FOR PUBLICATION

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Braden Victor Darkins,<br><br>             Plaintiff,<br><br>v.<br><br>Carolyn W. Colvin,<br><br>             Defendant. | No. CV-14-08246-PCT-JJT<br><br>**ORDER** |

At issue is the denial of Plaintiff Braden Victor Darkins's Application for Disability Insurance Benefits by the Social Security Administration ("SSA") under the Social Security Act ("the Act"). Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial, and the Court now considers Plaintiff's Opening Brief (Doc. 14, "Pl.'s Br."), Defendant Social Security Administration Commissioner's Opposition (Doc. 15, "Def.'s Br."), and Plaintiff's Reply (Doc. 16, "Pl.'s Reply").

**I.    BACKGROUND**

Plaintiff filed an Application for a Period of Disability and Disability Insurance Benefits under Titles II and XVIII of the Act on November 10, 2009, for a Period of Disability beginning October 16, 2008. (Doc. 11, R. at 340.) The parties do not dispute that Plaintiff's Last Date Insured for purposes of determining benefits under the Act is March 31, 2011. (R. at 340.) Plaintiff's claim was initially denied on March 18, 2010. (R. at 146.) Plaintiff testified at a hearing held before an Administrative Law Judge ("ALJ") on June 15, 2011. (R. at 73-123.) On July 6, 2011, the ALJ issued a decision denying Plaintiff's claim. (R. at 128-40.) On review, the Appeals Council ("AC") remanded

Plaintiff's case to the ALJ for further findings on December 7, 2012. (R. at 142-44.) Specifically, the AC ordered the ALJ to address the treatment records of Dr. Robyn Chase, to pose a hypothetical to a Vocational Expert that is consistent with the residual functional capacity (RFC) assessment, and to address Plaintiff's obesity. (R. at 142-44.) Plaintiff testified at another hearing held before the same ALJ on April 26, 2013. (R. at 38-72.) On June 6, 2013, the ALJ issued another decision denying Plaintiff's claims. (R. at 12-24.) The AC upheld the ALJ's second decision on October 24, 2014. (R. at 1-3.) The present appeal followed.

The Court has reviewed the medical evidence in its entirety and provides a short summary here. In 2008 and 2009, Plaintiff was under the care of a primary care physician, Dr. Luis Egelsee. (*E.g.*, R. at 754-78.) Dr. Egelsee found that Plaintiff had a fractured vertebra in his lower back, and Plaintiff underwent surgery on October 16, 2008, the alleged onset date. (R. at 798.) Plaintiff continued to see Dr. Egelsee after the surgery and underwent other procedures in his lower back, including medial branch blocks. (*E.g.*, R. at 436, 438, 483, 485, 487.) Dr. Egelsee prescribed medication and physical therapy and observed that Plaintiff experienced some improvement but had some difficulty standing, ambulating and sitting. (*E.g.*, R. at 754.)

On February 13, 2010, about 16 months after the alleged onset date, psychiatrist Dr. Rupali Chadha of the Los Angeles Department of Social Services examined Plaintiff. (R. at 580-87.) She observed that no psychiatric records regarding Plaintiff were available but that Plaintiff reported having Post Traumatic Stress Disorder (PTSD). (R. at 580.) Plaintiff took medication for depression which helped his low mood, and after an extensive examination, Dr. Chadha concluded that Plaintiff had mild depressive symptoms that are most likely due to lower back pain but that he did not meet the diagnostic criteria for Major Depressive Disorder and had no symptoms of PTSD. (R. at 586.)

At about the same time, on February 18, 2010, Dr. H. Harian Bleecker of the Los Angeles Department of Social Services examined Plaintiff. (R. at 590-94.) He reported

1  that Plaintiff had at least two accidents, on a motorcycle in 2004 and rollerblading in
2  2007, that he had various surgical procedures on his lower back in 2008 and 2009, that he
3  used a cane if he was required to walk more than ten minutes, and that he took
4  medications for pain. (R. at 590.) After a review of x-rays and an extensive physical and
5  functional examination, Dr. Bleecker concluded that, while Plaintiff had radicular pain
6  and numbness in his feet from his lower back injuries, Plaintiff could sit for six hours and
7  stand and walk with a cane up to four hours within an eight-hour period, and could lift 20
8  pounds occasionally and ten pounds frequently. (R. at 593.)

9  Plaintiff first sought treatment for back pain from Dr. Robyn Chase beginning in
10 September 2010, nearly two years after the alleged onset date. (R. at 710.) Dr. Chase
11 referred Plaintiff to physical therapy for his back pain and prescribed medication for
12 depression. (R. at 711.) Dr. Chase provided evaluations of Plaintiff's functional capacity
13 in May 2011, August 2011 and March 2013—all of which were after the Last Date
14 Insured. (R. at 643, 1362-70.) In those evaluations, Dr. Chase opined that Plaintiff
15 showed "objective signs of radiculopathy (nerve damage) and myelopathy (muscular
16 function)," that "his lower back x-rays and MRI do not explain these current findings,"
17 and that "his CT myelogram of the neck does reveal spinal cord impingement on
18 numerous levels." (R. at 643.) Dr. Chase also opined that Plaintiff "suffers from
19 depression and anxiety from his condition which is moderately controlled at the present
20 time," though there is no record of a psychological examination of Plaintiff by Dr. Chase.
21 (R. at 643.) She concluded that Plaintiff "is prohibited by his body's inability to sit or
22 stand for long periods of time, as well as the pain that accompanies this." (R. at 643; *see
23 also* R. at 1362-70.)

24 **II.   ANALYSIS**

25 The district court reviews only those issues raised by the party challenging the
26 ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court
27 may set aside the Commissioner's disability determination only if the determination is
28 not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d

625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* In determining whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

**A.     The ALJ Assigned Proper Weight to the Assessments of Plaintiff's Treating Physicians and Properly Considered the Record as a Whole**

Plaintiff disputes the ALJ's finding at step four of the five-step process, specifically, that when considering the combination of Plaintiff's impairments, Plaintiff's RFC allowed him to perform his past relevant work. Plaintiff's first argument is that the ALJ committed reversible error by assigning inadequate weight to the assessments of Plaintiff's medical care providers related to his lower back pain.[1] (Pl.'s Br. at 6-9.) Defendant argues that the ALJ properly weighed the treating professionals' assessments, offering specific and legitimate reasons supported by substantial evidence in the record for giving little weight to certain assessments. (Def.'s Br. at 5-12.)

An ALJ "may only reject a treating or examining physician's uncontradicted medical opinion based on 'clear and convincing reasons.'" *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (citing *Lester v. Chater*, 81 F. 3d 821, 830-31 (9th Cir. 1996)).  "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.*

In this instance, the ALJ found that the assessments of two of Plaintiff's treating physicians, Dr. Egelsee and Dr. Chase, were contradicted by the assessments of Dr. Bleecker. (R. at 18-23.) The Court must therefore examine whether the ALJ provided specific and legitimate reasons for discounting the assessments of Dr. Egelsee and Dr. Chase, supported by substantial evidence when examining the record as a whole. *See Carmickle*, 533 F.3d at 1164.

Dr. Egelsee's treatment notes are very difficult—nearly impossible—to read. For example, Plaintiff contends that Dr. Egelsee's January 13, 2009 notes state that Plaintiff was "unable to sit or stand long period of time" (Pl.'s Br. at 8 (citing R. at 754)), but the notes do not so state. They appear to say, "Able to walk. Unable to sit for long periods

---

[1] Plaintiff does not contend that the ALJ erred in assessing Plaintiff's alleged PTSD and depression.

- 5 -

[illegible]." (R. at 754.) No methodical evaluation by Dr. Egelsee of Plaintiff's functional capacity appears in the record, whether legible or not. But, in a letter to the ALJ dated June 15, 2011, Dr. Egelsee stated that Plaintiff "is clearly disabled as a result of his physical and emotional issues and is unable to work in any meaningful capacity." (R. at 1288.)

The ALJ found that Dr. Egelsee's generalized assessment of Plaintiff's functional capacity was both inconsistent with Dr. Egelsee's treatment records and unsupported by objective evidence, and the Court agrees. Several somewhat legible treatment notes—for example from June 11, 2009—state that Plaintiff's symptoms (both physical and emotional) were under control with medication. (R. at 756.) Most other treatment notes are illegible and therefore can neither lend support nor detract from Dr. Egelsee's later letter to the ALJ.

But on February 18, 2010, Dr. Bleecker methodically examined Plaintiff and thoroughly reviewed Plaintiff's treatment history. (R. at 590-94.) Dr. Bleecker concluded that, while Plaintiff experienced pain and numbness from his injuries, he could sit for six hours and stand and walk with a cane up to four hours within an eight-hour period, and could lift 20 pounds occasionally and ten pounds frequently. (R. at 593.) The ALJ provided specific and legitimate reasons for discounting Dr. Egelsee's generalized assessment of Plaintiff's functional capacity and favoring that of examining physician Dr. Bleecker. (*See* R. at 22.)

Likewise, the Court agrees with the ALJ's decision to discount the evaluations of Dr. Chase. First, as the ALJ pointed out, Dr. Chase only began to see Plaintiff nearly two years after the alleged onset date (and near the Last Date Insured), and she conducted all of her evaluations of Plaintiff's functional capacity after the Last Date Insured. (*See* R. at 22.) The connection of her reported findings to Plaintiff's actual functional capacity on or around the alleged onset date is thus tenuous. The ALJ also concluded that Dr. Chase's conclusions were not fully consistent with her treatment records or her reports that Plaintiff's symptoms were improved with pain medication. (*See, e.g.*, R. at 670 (April 6,

2011—one week after Last Date Insured—"Med change last visit. He is doing well with these.").) Dr. Chase's own notes indicate that x-rays and MRIs did not show a cause for Plaintiff's pain or show any instability in back flexion or extension. (*See, e.g.*, R. at 672, 679 (January 26, 2011—"Patient would like to have a second opinion on his MRI results because the first report stated that there was nothing wrong.").) And, along with being inconsistent with Dr. Bleecker's findings, the ALJ pointed out that Dr. Chase's findings were inconsistent with those of other treating doctors. (*See, e.g.*, R. at 445 (May 4, 2009: "Gait is normal," "range of motion is full with mild tenderness," "motor examination 5/5 throughout," and "patient's clinical examination does not reveal any obvious causes for his low back pain, although facet arthropathy may contribute.").) The ALJ provided specific and legitimate reasons for discounting Dr. Chase's assessments of Plaintiff's functional capacity and favoring those of other examining physicians. (*See* R. at 22.)

**B.    The ALJ's Alleged Misstatement of Fact Did Not Change the Outcome**

Plaintiff contends that the ALJ erred when he stated, "I have found no evidence of any nerve root impingement or severe stenosis to cause the severity of pain or limitations [Plaintiff] has alleged." (Pl.'s Br. at 9 (citing R. at 20).) In support of the ALJ's findings, multiple examining doctors concluded that Plaintiff's symptoms were not explained by physical examinations of Plaintiff's spine and lower back. (*See, e.g.*, R. at 445, 672.) Plaintiff contends that other reports do provide an explanation of a potential physical cause for his pain. (Pl.'s Br. at 9 (citing R. at 443, 643).) To the extent there is contradictory evidence of the physical cause of Plaintiff's reported pain, the ALJ also relied on the functional capacity examinations of multiple examining physicians. (*See, e.g.*, R. at 445, 590-94.) Thus, even if the Court disregards the ALJ's statement regarding evidence of the source of Plaintiff's pain, the ALJ's conclusions were supported by substantial evidence.

**C.    The ALJ Properly Weighed Plaintiff's Testimony**

Plaintiff also argues that the ALJ erred in his consideration of Plaintiff's symptom testimony. (Pl.'s Br. at 10-11.) In response, Defendant contends that the ALJ gave

Plaintiff's testimony the proper weight because some of his testimony was not supported by objective medical evidence, Plaintiff was somewhat successful in controlling his symptoms with medication and treatment and failed to follow certain treatment regimens, and Plaintiff engaged in physical activity despite his claimed limitations. (Def.'s Br. at 13-20.)

While credibility is the province of the ALJ, an adverse credibility determination requires the ALJ to provide "specific, clear and convincing reasons for rejecting the claimant's testimony regarding the severity of the claimant's symptoms." *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). The ALJ disagreed with certain statements of Plaintiff regarding the intensity, persistence and limiting effects of his conditions and his conclusion that he is disabled. (R. at 27, 41.)

In the instances in which the ALJ assigned little value to Plaintiff's statements, the Court finds the ALJ gave specific, clear and convincing reasons for doing so. The ALJ pointed out that Plaintiff's reports of his functional limitations were not consistent with the findings of examining physicians (as detailed above); that Plaintiff's pain improved with medication and medial branch blocks and that he declined certain other treatment regimens, such as regular exercise (*see, e.g.*, R. at 446-47, 664, 701, 704, 741-42); and that Plaintiff engaged in physical activities inconsistent with his reports of pain, such as driving to California, fishing with his son, and lifting and moving objects (*see, e.g.*, R. at 692, 696, 1294). The ALJ's credibility determination was thus supported by substantial evidence in the record and free from error. *See* 20 C.F.R. § 404.1529(c)(3); *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008); *Warre ex rel. E.T. IV v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006).

## III. CONCLUSION

Plaintiff raises no error on the part of the ALJ, and the SSA's decision denying Plaintiff's Application for a Period of Disability and Disability Insurance Benefits under the Act was supported by substantial evidence in the record.

IT IS THEREFORE ORDERED affirming the June 6, 2013 decision of the Administrative Law Judge, (R. at 12-24), as upheld by the Appeals Council on October 24, 2014 (R. at 1-3).

IT IS FURTHER ORDERED directing the Clerk to enter final judgment consistent with this Order and close this case.

Dated this 15th day of March, 2016.

Honorable John J. Tuchi
United States District Judge